UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

TAURUS BARTLETT p/k/a "POLO G",

    Plaintiff                           :

  -against-                                    23 Civ. 10345 (JMF)

                                           **ANSWER TO COMPLAINT**

                                           **WITH AFFIRMATIVE**

                                           **DEFENSES;**

J. NOAH, B.V. and JOZEF WANNO,       :  **COUNTERCLAIM**

    Defendants

J. NOAH, B.V.,

    Counter-Claimant

  -against-

TAURUS BARTLETT p/k/a/ "POLO G"

    Counter-Defendant

---------------------------------------------------------------------------------------------------------------

**ANSWER TO COMPLAINT WITH AFFIRMATIVE DEFENSES**

     COME NOW your Defendants, J. Noah B.V. (hereinafter "J Noah") and Jozef Wanno (hereinafter "Wanno") (collectively, "Defendants"), who respectfully Answer the Complaint, with Affirmative Defenses as follows:

**A. ANSWER TO COMPLAINT**

1. Denied.

2. Denied.

3. Denied.

4. Denied.

5. Denied.

6. Denied.

7. Denied.

8. Denied.

9. Admitted.

10. Admitted

11. Admitted in part, denied in part. It is admitted that co-defendant WANNO resides in the Netherlands. All other allegations are specifically denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied. Defendants lack knowledge or information sufficient to form a belief as about the truth of this allegation.

19. Denied. Defendants lack knowledge or information sufficient to form a belief as about the truth of this allegation.

20. Denied. Defendants lack knowledge or information sufficient to form a belief as about the truth of this allegation.

21. Defendants lack knowledge or information sufficient to form a belief as about the truth of this allegation.

22. Denied.

23. Denied. Defendants lack knowledge or information sufficient to form a belief as about the truth of this allegation.

24. Denied. Defendants lack knowledge or information sufficient to form a belief as about the truth of this allegation.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

   33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Admitted that the allegations are incorporated by reference.

42. Denied.

43. Denied.

44. Denied.

45.  Denied.

46.  Denied.

47.  Denied.

48.  Admitted that the allegations are incorporated by reference.

49. Denied.

50. Denied.

51. Denied.

52.  Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Admitted that the allegations are incorporated by reference.

59. Denied.

60. Denied.

61. Denied.

62.  Denied.

63. Denied.

64. Admitted that the allegations are incorporated by reference.

65. Denied.

66. Denied.

67. Denied.

68. Admitted that the allegations are incorporated by reference.

69. Denied.

70. Denied.

71. Denied.

72. Admitted that the allegations are incorporated by reference.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Admitted that the allegations are incorporated by reference.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Admitted that the allegations are incorporated by reference.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied

92. Admitted that the allegations are incorporated by reference.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Admitted that the allegations are incorporated by reference.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

B. **AFFIRMATIVE DEFENSES**

### AFFIRMATIVE DEFENSE I

Plaintiff's claims are barred by his consent.

### AFFIRMATIVE DEFENSE II

Plaintiff's claims are barred by the doctrine of estoppel.

### AFFIRMATIVE DEFENSE III

Plaintiff's claims are barred by the doctrine of waiver.

### AFFIRMATIVE DEFENSE IV

Plaintiff's claims are barred by the doctrine of laches.

## AFFIRMATIVE DEFENSE V

Plaintiff's claims are barred by defendant J. NOAH's payment to Plaintiff.

## AFFIRMATIVE DEFENSE VI

Plaintiff's claims are barred by Plaintiff's fraud.

## AFFIRMATIVE DEFENSE VII

Plaintiff's claims are barred by Plaintiff's justification.

## AFFIRMATIVE DEFENSE VIII

Plaintiff's claims are barred by Plaintiff's release.

## AFFIRMATIVE DEFENSE IX

Plaintiff's claims are barred by Plaintiff's license to Defendants.

## AFFIRMATIVE DEFENSE X

Plaintiff's claims are barred by privilege.

C. **COUNTERCLAIM**

**COMES NOW** your Counter-Claimant, J. NOAH, B.V., who respectfully Counterclaims against Counter-Defendant BARTLETT as follows:

**THE PARTIES**

1. Counter-Claimant J. NOAH BV, doing business as J-NOAH ENTERTAINMENT (hereinafter "J-NOAH") is a private limited company based in the Netherlands, akin to an American limited liability company, doing business since 2014 as a booking and touring company in the entertainment world, with its principal office located at Prins Bernhardplantsoen 204, 7551 HT Hengelo, The Netherlands.

2. Counter-Defendant TAURUS BARTLETT is a private adult individual doing business as, and professionally known in the music business as "POLO G" (hereinafter "BARTLETT");  Counter-Defendant BARTLETT is a citizen of Los Angeles CA, with his authorized agent c/o Sedlmayr & Associates, P.C., 489 Fifth Avenue, 30th Fl., NY, NY 10017; Counter-Defendant BARTLETT is a rapper and performer professionally known as "POLO G".

3. At all times material hereto, Counter-Defendant BARTLETT acted on his own behalf, individually and d/b/a ONLY DREAMERS MANAGEMENT, and/or through the acts of his agents, servants, employees, representatives and the like, acting within their course of employment and/or agency and scope of duties (collectively, "BARTLETT").

**COUNT ONE: BREACH OF EXPRESS WRITTEN AGREEMENTS**

4. Jurisdiction and venue is appropriate in this forum pursuant to this Court's Order of January 13, 2025 denying Counter-Claimant's Rule 12(b)(2)  Motion to Dismiss for Lack of Jurisdiction.  Doc No. 48.

5. On or about August 11, 2023,  and thereafter, Counter-Defendant  BARTLETT entered into a series of Eleven (11) "Artist Engagement & Performance Agreement[s]" with J-NOAH,  providing for Counter-Claimant J-NOAH to book, promote and market an 11-city European tour for BARLETT's live performances at 11 different cities throughout Europe.

6. The eleven agreements were virtually identical, save for the performance fee, performance date, and venue.  A true and correct copy of one such agreement, for the

"Berlin" performance by BARTLETT, is attached hereto and incorporated by reference as though fully set forth herein and made a part hereof.

7. The European tour was scheduled for the months of November and December of 2023.

8. In accordance with the series of express written agreements, and at the demand of BARTLETT, J-NOAH sent Eleven (11) separate wires to Counter-Defendant, totaling One Hundred Forty-Eight Thousand Seven Hundred and Fifty Dollars (**$148,750**), which funds constituted the necessary, agreed upon deposits required to secure Counter-Defendant's full and faithful performances on the following dates, in the following cities:

11/3/2023- Berlin, Germany

11/4/2023- Ulm, Germany

11/7/2023 – Amersterdam, The Netherlands

11/10/2023- Warsaw, Poland

11/11/2023- Dubai, United Arab Emerites

11/16/2023- Tel Aviv, Israel

11/19/2023- Prague, Czech Republic

11/21/2023 – Milan, Italy

11/22/2023- Barcelona,Spain

11/24/2023- Hamburg, Germany

11/25/2023 – Cologne, Germany

12/02/2023-  Copenhagen, Denmark

9. The deposit funds were dutifully and timely wired to the specified bank account as directed by BARTLETT; a true and correct copy of one such wire, for $12,500, remitted from J-NOAH to BARTLETT, to secure the Berlin, Germany performance date, is attached hereto as Exhibit and incorporated by reference as though fully set forth herein and made a part hereof.

10. Thereafter, BARTLETT cooperated with J-NOAH to enable J-NOAH to be able to properly promote, market, advertise, and be ready for the series of Eleven (11) BARTLETT performances in 11 different cities, a large task.

11. In doing so, there was an exchange of necessary "assets" between BARTLETT and J-NOAH, to facilitate J-NOAH's proper promotion, marketing and advertising of defendant BARTLETT's live musical performances throughout the European cities set forth hereinabove.

12. In order to prepare for the live performances, J-NOAH performed the necessary services in anticipation of BARTLETT's European tour, including but not limited to:

   A) Secure appropriate venues for defendant BARTLETT's live performances;

   B) Securing transportation;

   C) Securing hotel accommodations;

   D) Preparing and commencing to implement a professional promotion and marketing plan;

   E) Advertising;

   F) Conferring with other promoters; and,

   G) Performing such additional efforts required to attempt to ensure a successful European tour, to effectuate a win-win for J-NOAH and BARTLETT.

13. **Subsequent to** J-NOAH's proper emittance of the requisite deposit funds to BARTLETT, J-NOAH's commencement of the above-stated services, and J-NOAH's expenditures necessary for a successful European tour, BARTLETT materially breached the parties' express written series of agreements by unilaterally cancelling the tour.

14. BARTLETT contrived various excuses as to why he cancelled the tour, all of which were false; the false excuses did not legally excuse BARTLETT from fully performing his obligations under the parties' series of written agreements; nonetheless, **BARTLETT saw fit to retain the $148,750 wire to him by BARTLETT**, which he

unlawfully continues to retain, and as a result, Counter-claimant J-NOAH has sustained actual damages of **$148,750** pertaining to the unrefunded performance deposits.

15. As a direct and proximate result of BARTLETT's material breach, J-NOAH suffered further monetary damages in the sum of **$251,678** for out-of-pocket expenses incurred in preparation of BARTLETT's European tour, inclusive but not necessarily limited to the following:

    Costs to Secure Venues for the Performances

    Production Deposits (lights, sound, producers, engineers, etc.)

    Marketing and Promotion

    Hotel Deposits

    Transportation Deposits

16. As a further direct and proximate result of BARTLETT's material breach, J-NOAH sustained loss of gross profits in excess of Two Hundred Thousand Dollars ($200,000).

17. Upon information and belief, the motive behind BARTLETT's inexcusable conduct was inclusive but not limited to:

    a) Leveraging the J-NOAH deal to gain a larger payday from another booking agent, investor, or other entertainment-related entity or person;

    b) Joining forces with a larger and more powerful booking agency other than the "mom-and-pop" Dutch company J-NOAH.

18. As a result of the series of agreements entered into between the parties, upon information and belief the value of BARTLETT's live performance fees began to increase significantly, to the benefit of BARTLETT.

19. The failure of BARTLETT to perform as agreed, by BARTLETT's material breach of the express written agreements, caused monetary damages to J-NOAH as set forth hereinafter.

20. To add insult to injury, BARTLETT attempted to further repudiate his obligations to J-NOAH by providing additional lame, false excuses for his non-performance, including

11

public comments of a derogatory nature aimed at Counter-Claimant, some of which were derogatory comments to national and international press- to purportedly justify his material breach.

21. Despite J-NOAH's repeated demands, Counter-Defendant refuses to pay any money to J-NOAH; Counter-Defendant BARTLETT is liable to Counter-Claimant J-NOAH for breach of express written agreements.

WHEREFORE, on Count One, J-NOAH demands judgment in its favor and against BARTLETT as follows:

A) Damages of $148,750 for total aggregate of the deposits paid and never refunded;

B) Damages of $251,678 for unrecouped expenses incurred due to BARTLETT's breach;

C) Damages in excess of $200,000 for lost profits;

D) Reasonable costs;

E) Accrued interest; and,

F) Such other and further relief as this Court may deem proper.

### COUNT TWO: BREACH OF EXPRESS ORAL AGREEMENTS

22. Paragraphs 1 through 21 are incorporated by reference as though fully set forth herein and made a part hereof.

23. This Count is being brought because the Counter-Defendant BARTLETT alleges that the series of express written agreements is invalid and unenforceable, and in the event this Court accepts BARTLETT's allegations as true in this regard.

24. In the alternative, Counter-Claimant J-NOAH and Counter-Defendant BARTLETT entered into a series of express oral agreements, providing in relevant part for plaintiff J-NOAH to facilitate an 11-city European tour for BARTLETT.

25. The oral agreement provided for a deposit payable in advance by J-NOAH to secure BARTLETT's professional performer services, to perform for each appearance on the tour; the total deposits payable to secure the performances was **$148,750**.

26. J-NOAH fully and faithfully performed under the terms of the oral agreement by dutifully facilitating a European tour for BARTLETT, and by timely and properly wiring Eleven (11) separate deposits to BARTLETT's designated authorized agent, TOTAL ACCESS, totaling $148,750 in the aggregate. See Exhibit, referenced, *supr,* and incorporated by reference.

27. BARTLETT materially breached the series of oral agreements by unilaterally cancelling the tour without justification, by wrongfully retaining the **$148,750** deposit monies, by repudiating his obligations, and by issuing derogatory public statements against J-NOAH.

28. As a direct and proximate result of BARTLETT's material breach, J-NOAH suffered further monetary damages in the sum of **$251,678** for out-of-pocket expenses incurred in preparation of BARTLETT's European tour, as aforepleaded.

29. As a further direct and proximate result of BARTLETT's material breach, J-NOAH sustained loss of gross profits in excess of Two Hundred Thousand Dollars ($200,000).

30. Despite repeated demand, Counter-Defendant BARTLETT has ignored J-NOAH's demands.

31. Accordingly, BARTLETT is liable to J-NOAH for breach of express oral agreements. WHEREFORE, on Count Two, J-NOAH demands judgment in its favor and against BARTLETT as follows:

   A) Damages of $148,750 for total aggregate of the deposits paid and never refunded;

   B) Damages of $251,678 for unrecouped expenses incurred due to BARTLETT's breach;

   C) Damages in excess of $200,000 for lost profits;

   D) Reasonable costs;

E) Accrued interest; and,

F) Such other and further relief as this Court may deem proper.

## COUNT THREE: BREACH OF IMPLIED IN LAW AGREEMENT-
## UNJUST ENRICHMENT

32. Paragraphs 1 through 31 are incorporated by reference as though fully set forth herein and made a part hereof.

33. The parties entered into an implied-in-law agreement, the salient terms of which provided for J-NOAH's to pay deposits totaling $148,750 to BARTLETT to secure BARTLETT's performances for an 11-city European tour, and for J-NOAH to perform additional services as aforepleaded.

34. J-NOAH incurred the financial detriments of $148,750 for the performance deposits, and $251,678 in expenses necessary to complete performance of J-NOAH's obligations under the parties' implied-in-law agreements.

35. BARTLETT was unjustly enriched by the duped J-NOAH, by receiving the benefit of $148,750 in cash, and receiving $251,678 in expenses necessary for BARTLETT's performances on the 11-city tour which the parties' agreed to.

36. In addition, as a result of services performed by J-NOAH, BARTLETT's performance fees greatly increased, creating an additional pecuniary benefit to BARTLETT.

37. There is no justification for BARTLETT being unjustly enriched to the detriment of J-NOAH.

38. Counter-Defendant BARTLETT is liable to Counter-Claimant J-NOAH under the doctrine of breach of quasi-contract a/k/a breach of implied in law contract – for unjust enrichment.

WHEREFORE, on Count Three, Counter-Claimant J-NOAH demands judgment in its favor and against Counter-Defendant BARTLETT as follows:

A) Damages of $148,750 for total aggregate of the deposits paid and never refunded;

B) Damages of $251,678 for unrecouped expenses incurred due to BARTLETT's breach;

C) Damages in excess of $200,000 for lost profits;

D) Damages for a sum to be proven at trial for the increased profits earned by BARTLETT as a result of increased performance fees as a result J-NOAH's services;

E) Reasonable costs;

F) Accrued interest; and,

G) Such other and further relief as this Court may deem proper.

### COUNT FOUR: BREACH OF IMPLIED-IN-FACT AGREEMENT

39. Paragraphs 1 through 38 are incorporated by reference as though fully set forth herein and made a part hereof.

40. In August of 2023, an implied-in-fact agreement existed between J-NOAH BARTLETT, forged by the conduct of the parties, manifesting an intent to enter into an agreement,

41. The conduct giving rise to the implied-in-fact agreement include the following:
**$148,750** deposit monies remitted to BARTLETT by J-NOAH;
Acceptance **and unlawful retention** of the deposit monies by BARTLETT;
Discussions and understandings as to the 11-city European tour, including the dates, times and cities for the tour, and the performance fees payable to BARTLETT for the tour
Discussions in regard to the promotion, marketing, advertising and production of the tour.

42. Counter-Claimant J-NOAH fully and faithfully performed under the terms of the implied-in-fact agreement.

43. BARTLETT materially breached the implied-in-fact agreement by unilaterally refusing to perform, by unlawfully retaining the $148,750 deposit monies paid towards

15

BARTLETT's performances; by issuing derogatory statements about J-NOAH in the press; by providing a false excuse regarding non-performance; and by performing no services as agreed.

44. As a direct and proximate result of BARTETT's material breach of the implied-in-fact agreement, J-NOAH suffered monetary damages as aforepleaded.

45. Counter-Defendant BARTLETT is liable to J-NOAH for breach of implied-in-fact agreement.

WHEREFORE, on Count Four, plaintiff J-NOAH demands judgment in its favor and against defendant BARTLETT as follows:

A) Damages of $148,750 for total aggregate of the deposits paid and never refunded;

B) Damages of $251,678 for unrecouped expenses incurred due to BARTLETT's breach;

C) Damages in excess of $200,000 for lost profits;

D) Damages for a sum to be proven at trial for the increased profits earned by BARTLETT as a result of increased performance fees as a result J-NOAH's services;

E) Reasonable costs;

F) Accrued interest; and,

G) Such other and further relief as this Court may deem proper.

### COUNT FIVE: PROMISSORY ESTOPPEL

46. Paragraphs 1 through 45 are incorporated by reference as though fully set forth herein and made a part hereof.

47. In August of 2023, Counter-Defendant BARTLETT clearly and unambiguously promised Counter-Claimant J-NOAH that he will dutifully perform on the aforepleaded 11-city European tour during the months of November and December 2023.

48. J-NOAH justifiably relied upon said BARTLETT's promise.

16

49. In justifiable reliance on BARTLETT's promise to dutifully perform, J-NOAH remitted **$148,750** to BARTLETT as a deposit towards BARTLETT's performance, incurred expenses of $251,678, and suffered lost profits in excess of $200,000 as a direct and proximate result of BARTLETT's breach of promise.

50. BARTLETT is liable unto J-NOAH under the doctrine of promissory estoppel.

   WHEREFORE, on Count Five, J-NOAH demands judgment in its favor and against BARTLETT, as follows:

   A) Damages of $148,750 for the sum of deposits paid and never returned in reliance upon defendants' promise;

   B) Damages of $251,678 for unrecouped expenses incurred;

   C) Damages in excess of $200,000 in lost profits;

   D) Reasonable costs;

   E) Accrued interest; and,

   F) Such other and further relief as this Court may deem proper.

### COUNT SIX: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

51. Paragraphs 1 through 50 are incorporated by reference as though fully set forth herein and made a part hereof.

52. Counter-Defendant BARTLETT owed Counter-Claimant J NOAH a duty of good faith and fair dealing.

53. Defendant breached his obligation of good faith and fair dealing, inclusive but not limited to:

   A) Wrongfully and unjustifiably retaining the **$148,750** deposit monies paid to secure defendant BARLTETT's performance;

   B) Wrongfully failing to reimburse J-NOAH its expenses incurrred for the tour;

   C) Concocting phony excuses to unilaterally cancel the 11-city tour;

   D) Concocting a phony excuse to file a civil action against Counter-Claimant;

17

    E) Making derogatory public statements in the national and international press against J-NOAH;

    F) Failing to make any effort to appear at **any** live performances as agreed in regard to the 11-city European tour; and

    G) Failing to mitigate damages.

54. As a direct and proximate result of BARTLETT's breach of duty of good faith and fair dealing, J-NOAH sustained losses as aforepleaded.

55. BARTLETT's breach of good faith and fair dealing was intentional, wilful, wanton, and with reckless disregard for the rights of Counter-Claimant J-NOAH.

56. BARTLETT's breach of good faith and fair dealing was outrageous, warranting an award of punitive damages under these circumstances.

57. Counter-Defendant BARTLETT is liable to Counter-Claimant J-NOAH for breach of his duty of good faith and fair dealing.

    WHEREFORE, on Count Six, J-NOAH demands judgment in its favor and against BARTLETT, as follows:

    A) The sum of $148,750 for deposits paid and never returned;

    B) The sum of $251,678 for unrecouped expenses;

    C) The sum in excess of $200,00 in lost profits;

    D) Damages for a sum to be proven at trial for the increased profits earned by BARTLETT as a result of increased performance fees as a result J-NOAH's services;

E) The sum to be proven at trial for punitive damages;

F) Reasonable costs;

G) Accrued interest; and,

H) Such other and further relief as this Court may deem proper.

Dated: As of this 25th day of February, 2025

                            Respectfully submitted,

                    **LAW OFFICE OF SIMON ROSEN, PLLC**

                    **By: /Simon J. Rosen, Esq./**
                      Counsel for J. NOAH, B.V. and JOZEF
                      WANNO
                      Defendants

                      Counsel for J. NOAH, B.V.
                      Counter-Claimant

                128 Greenwood Avenue, 2nd Floor
                Wyncote PA 19095
                Tel. w (215)564-0212
                    c (215)519-9514)
              Email: simononkey@aol.com

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

J. NOAH, B.V.,

        Counter-Claimant              No. 23-10345 (JMF)

 -against-

TAURUS BARTLETT p/k/a/ "POLO G"    **CERTIFICATION OF COUNTER-CLAIM**

      Counter-Defendant

-----------------------------------------------------------

I, Simon J. Rosen, Esq., attorney for Counter-Claimant J. NOAH, B.V., hereby Certify that to the best of my knowledge, information and belief, the amount in controversy in regard to the Counterclaim, is in excess of $150,000, exclusive of interest and costs.

Dated:  February 25, 2025        Respectfully submitted,

                                        **LAW OFFICE OF SIMON ROSEN, PLLC**

                                        **By: /Simon J. Rosen, Esq./**
                                          Counsel for J. NOAH, B.V.
                                          Counter-Claimant

                                        128 Greenwood Avenue, 2nd Floor
                                        Wyncote PA 19095
                                        Tel. w (215)564-0212
                                            c (215)519-9514)
                                        Email: simononkey@aol.com